UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
SANTOS ARNULFO ESCOBAR and FRANCISCO
GALINDO APARICIO, individually and on behalf of
others similarly situated,

                               Plaintiffs,

       -against-

MAHOPAC FOOD CORP. (d/b/a ASSOCIATED f/d/b/a
PIONEER), DARHAN DARHAN, HAMED DOE, and
JOE DOE (A/K/A HAKMET A. OTHAM, A/K/A JOEY
OTHMAN),

                               Defendants.
------------------------------------------------------------------------x

**REPORT &
RECOMMENDATION**

No. 19-CV-00510-FB-JRC

JAMES R. CHO, United States Magistrate Judge:

## Introduction

Plaintiff Santos Arnulfo Escobar ("Escobar" or "plaintiff")[1] commenced this action,

pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), on

behalf of himself and a putative FLSA collective against Mahopac Food Corp. ("Mahopac"),

Darhan Darhan ("Darhan"), and Joe Doe (a/k/a Hakmet A. Otham, a/k/a Joey Othman) ("Joe"

and collectively, "defendants" or "defaulting defendants").  Plaintiff also asserts claims against

Hamed Doe ("Hamed").  Plaintiff seeks unpaid minimum and overtime wages, compensation for

failure to provide proper wage notices and wage statements, statutory damages, liquidated

---

[1] Plaintiff Francisco Galindo Aparicio ("Aparicio") commenced this action with Escobar.  On
November 9, 2020, plaintiffs Escobar and Aparicio moved for default judgment.  *See* Dkts. 46,
47.  On March 11, 2021, plaintiffs' counsel notified the court that Aparicio had passed away.
*See* Dkt. 49.  As a result, the Court denied the motion for default judgment filed on their behalf;
the Court permitted plaintiffs' counsel to substitute a new plaintiff on behalf of Aparicio as
permitted by Rule 25 of the Federal Rules of Civil Procedure or file a motion for default
judgment on behalf of plaintiff Escobar only.  *See* Order dated March 22, 2021.  On March 9,
2022, Plaintiffs' counsel moved for default on behalf of plaintiff Escobar only.  *See* Mot. for
Default J., Dkt. 60; *see also* Minute Entry dated January 7, 2022 (seeking default on behalf of
Escobar only).  This Court addresses the claims brought by plaintiff Escobar only.

damages, pre- and post-judgment interest, and attorney's fees and costs. *See* Second Am. Compl., Dkt. 26 ("SAC").

Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court noted the default of the individual defendants Darhan and Joe on January 15, 2020, Dkt. 39, and defendant Mahopac on September 9, 2020. *See* Certificate of Default, Dkts. 39, 45. Plaintiff then moved for default judgment against the defaulting defendants Darhan, Joe, and Mahopac. *See* Not. of Mot. for Default J., Dkt. 51.[2] Plaintiff also moved for default against Hamed notwithstanding plaintiff's failure to effectuate service of the summons and complaint on him.[3] Further, the Clerk of Court never filed a Certificate of Default as to Hamed.

Currently pending before this Court, on a referral from the Honorable Frederic Block, is plaintiff's motion for default judgment. *See* Order Referring Motion dated March 9, 2022. For

---

[2] This was not plaintiff's first motion for default. Plaintiff first moved for default on August 26, 2020, *see* Dkt. 41, for which the court entered an Order to Show Cause as to why the motion should not be denied, *see* Dkt. Entry dated August 27, 2020. Plaintiff subsequently withdrew the first motion for default on September 2, 2020. *See* Dkt. 42. Plaintiff again moved for default on November 9, 2020. *See* Dkt. 46. On March 22, 2021, upon learning of the plaintiff Francisco Galindo Aparicio's death, the Court denied plaintiff's second motion and allowed plaintiff's counsel to substitute a new plaintiff or file a default on behalf of plaintiff Escobar only, as permitted by Federal Rule of Civil Procedure 25. *See* Order dated March 22, 2021. Plaintiff's third motion for default was filed on May 11, 2021. *See* Dkt. 51. The Court entered an Order to Show Cause on February 24, 2022, because it appeared that plaintiff had failed to serve his motion for default on defendants. *See* Order to Show Cause dated February 24, 2022. Plaintiff filed an affidavit of service on February 25, 2022, which failed to establish that plaintiff served his motion on defendants at the time the motion was filed. *See* Dkt. 58. On February 25, 2022, the Court entered another Order to Show Cause directing the plaintiff to address the shortcomings of the affidavit of service or to withdraw his motion for default. *See* Order to Show Cause dated February 25, 2022. Plaintiff moved to withdraw his third motion for default on March 1, 2022, Dkt. 59, which the Court granted, *see* Order dated March 1, 2022. Plaintiff's fourth and instant motion for default was filed on March 9, 2022. Dkt. 60.
[3] It appears that plaintiff unsuccessfully attempted to serve the First Amended Complaint on Hamed Doe on February 13, 2019. It further appears from the docket that there was no such attempt on the plaintiff's part to serve the Second Amended Complaint on Hamed.

the reasons described below, this Court respectfully recommends granting plaintiff's motion for default judgment as to defendants Darhan, Joe, and Mahopac, but denying plaintiff's motion as to defendant Hamed.

## Background

The following facts are taken from the SAC (Dkt. 26) and assumed to be true for purposes of this motion. Mahopac is a supermarket with a principal place of business at 530-86 86th Street, Brooklyn, New York 11209. SAC ¶ 2. Defendants Darhan, Hamed, and Joe operated, managed, and "controlled significant functions" of Mahopac. *Id*. ¶¶ 3, 21, 22, 23.

Plaintiff is a former employee of Mahopac. *Id*. ¶ 1. Plaintiff worked for defendants from approximately 2011 to November 22, 2018 as a butcher. *Id*. ¶¶ 37-38. Plaintiff typically worked six days per week. *Id*. ¶¶ 42-43. From January 2013 until December 2016, he worked from 8:00 a.m. until 7:00 p.m. or a total of 66 hours per week. *Id*. ¶ 42. He was paid $550 per week from approximately January 2013 until November 2017. *Id*. ¶ 45. From January 2017 to November 22, 2018, plaintiff worked from 8:00 a.m. to 6:00 p.m. or a total of 60 hours per week. *Id*. ¶ 43. From approximately December 2017 until November 22, 2018, plaintiff was paid $650 per week. *Id*. ¶ 46. From January 2013 to November 22, 2018, plaintiff alleges that he received $200 by check and the rest in cash. *Id*. ¶¶ 44-46. Escobar also alleges that he was required to purchase "tools of the trade," which included "one pair of cooking shoes per year and washing services of his uniform." *Id*. ¶ 55.

Plaintiff commenced this action on January 25, 2019. *See* Dkt. 1. He alleges nine causes of action:  failure to pay minimum wage and failure to pay overtime under FLSA, failure to pay minimum wage, failure to pay overtime, failure to pay spread-of-hours compensation, failure to

meet the notice and recordkeeping requirements, violation of wage statement provisions, recovery of equipment costs, and violation of the timely payment provisions under NYLL.

After being served with the summons and the Second Amended Complaint, defendants Mahopac, Darhan, and Joe failed to appear, answer, or otherwise respond to the Second Amended Complaint.[4]  Plaintiff sought, and the Clerk of Court entered, a certificate of default.  *See* Dkts. 39, 45.  On March 9, 2022, plaintiff filed the instant motion for default judgment.  *See* Dkt. 60.  Judge Block referred the renewed motion to the undersigned for a report and recommendation.  *See* Order Referring Mot. dated March 9, 2022.

## Discussion

### I.    Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment.  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  This first step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of the Court enters a defendant's default, the court may enter a default judgment.  *See* Fed R. Civ. P. 55(b).

Here, on January 15, 2020, the Clerk of the Court entered a certificate of default against the individual defaulting defendants -- Darhan and Joe -- after they failed to appear.  *See* Dkt. 39.

---

[4] As previously stated, it does not appear from the docket that defendant Hamed Doe was ever served a summons or complaint.

On September 9, 2020, the Clerk of the Court entered a certificate of default against the defaulting corporation, Mahopac.  *See* Dkt. 45.

"Default judgments are generally disfavored and are reserved for rare occasions." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (internal quotation marks omitted)).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Diakuhara*, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*.  Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default.  *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk enters a certificate of default, the defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citations omitted).  A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citations and internal quotation marks omitted).  Ultimately, whether to grant a motion for default judgment is

"left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Diakuhara*, 10 F.3d at 95); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660, 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019) (citing *Diakuhara*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). "These factors are 1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (internal quotation marks omitted)).

"As to the first factor, a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Id.* (quoting *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (collecting cases) (internal quotation marks omitted)). Here, the defaulting defendants have not responded to the complaint or any of the amended complaints despite proper service. *See* Dkts. 60-3, 60-5. Plaintiff also submitted an affidavit of service confirming that the defaulting defendants were provided notice of the motion for default judgment. *See* Affidavit of Service, Dkt. 61. The defaulting defendants have nonetheless failed to respond to plaintiff's motion for default judgment or to otherwise appear in this action.

Accordingly, the defaulting defendants' failure to respond to the SAC or the instant motion demonstrates that their default was willful.

As to the second factor, the defaulting defendants' failure to appear in this action has left the Court unable to assess whether defendants have a meritorious defense.  This weighs in favor of granting a default judgment.  *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.") (citation omitted).

With respect to the third factor, because the defaulting defendants have demonstrated a refusal to engage in this action, "there are no additional steps available to secure relief [against defendants] in this Court."  *Trustees of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).  The Court thus finds that the prejudice factor weighs in favor of default judgment.

Accordingly, the Court recommends finding that the defaulting defendants' failure to answer or otherwise respond to the Second Amended Complaint constitutes an admission of the factual allegations therein.  The Court now assesses the propriety of a default judgment for each of plaintiff's claims in the Second Amended Complaint.

## II.   Liability

Plaintiff moves for default judgment on his claims under the FLSA and the NYLL.  For the reasons set forth below, this Court concludes that plaintiff properly alleges facts giving rise to liability.

A.    **Statute of Limitations**

As an initial matter, the Court must determine whether plaintiff timely filed this lawsuit. The NYLL has a six-year statute of limitations, *see* N.Y. Lab. Law § 663(3), and the FLSA has a two-year statute of limitations, *see* 29 U.S.C. § 255(a), unless plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years.  *See id*.

Here, plaintiff alleges that the defaulting defendants willfully violated the FLSA.  *See* Declaration of Catalina Sojo, Esq. in Support of Order for Judgment by Default ("Sojo Decl.") (Dkt. 60) ¶ 43.  "Generally, courts have found that a defendant's default establishes willfulness." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (citing *Hernandez v. PKL Corp.*, No. 12-CV-2276, 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013)); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) ("The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness."); *see also Luna*, 2017 WL 835321, at *9 ("By virtue of Defendant' default, combined with Plaintiffs' allegations that Defendants "willfully" violated the FLSA . . . the three-year statute of limitations applies to Plaintiffs' FLSA claims."); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)) ("In the present case, defendants defaulted, and therefore the three-year statute of limitations applies.").  This Court deems plaintiff's allegations to be admitted by virtue of the defendants' default and, thus, this Court finds that the defendants' violations were willful, and applies the three-year limitations period for the FLSA violations.

Plaintiff filed the initial Complaint on January 25, 2019. *See* Dkt. 1. Plaintiff, therefore, may recover damages arising out of his employment going back six years under state law, or January 25, 2013, or three years under federal law, or January 25, 2016. *See Luna*, 2017 WL 835321, at *9; *Khurana v. JMP USA, Inc.*, No. 14-CV-4448, 2017 WL 1251102, at *13 (E.D.N.Y. Apr. 5, 2017). Plaintiff alleges that the defaulting defendants employed him from approximately 2011 to November 22, 2018 as a butcher. *See* SAC ¶¶ 37-38. Plaintiff can accordingly recover under the NYLL from January 25, 2013 to the end of his employment on November 22, 2018, and under the FLSA from January 25, 2016 to November 22, 2018.[5] *See* Decl. of Plaintiff Santos Arnulfo Escobar ("Pl. Decl.") ¶ 8, Dkt. 60-7; *see also* Sojo Decl. ¶ 44.

### B.  FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019) (citing *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014)). To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists and (2) the employment falls under the FLSA's individual or enterprise coverage provisions. *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see*

---

[5] The Sojo Declaration states that plaintiff worked up until approximately November 11, 2018, not November 22, 2018. *See* Sojo Decl. ¶ 44, Dkt. 60. However, plaintiff Escobar's declaration, as well as the SAC, state that plaintiff worked until on or about November 22, 2018. *See* Pl. Dec. ¶ 8; SAC ¶ 43, Dkt. 26.

*also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

### 1.   Whether Defaulting Defendants were Plaintiff's Employer under the FLSA

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a).  The FLSA further defines the term "employee" as "any individual employed by an employer."  *Id.* § 203(e)(1).  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

There is "no rigid rule for the identification of an FLSA employer."  *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374-75 (E.D.N.Y. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).  Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case."  *Herman*, 172 F.3d at 139 (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see also Baizan Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104-05 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship. *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003).

Plaintiff's unopposed allegations are sufficient to conclude that defendants employed plaintiff under the definition of the FLSA. Plaintiff alleges that the individual defendants "had the power to hire and fire Plaintiff, control Plaintiff's terms and conditions of employment, and determine the rate and method of Plaintiff's compensation." Sojo Decl. ¶ 10. Plaintiff claims that the individual defendants "determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees." SAC ¶¶ 21-23. As the "economic reality" factors are satisfied by plaintiff's allegations, this Court thus finds that the defaulting defendants employed plaintiff under the definition of the FLSA. *See Irizarry*, 722 F.3d at 104-05 (2d Cir. 2013); *see also Sarmiento Perez v. Comhar Grp.*, No. 19-CV-0964, 2020 WL 1364908, at *3-*4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Rodriguez v. Solares Corp.,* No. 16-CV-3922, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Additionally, plaintiff's allegations are sufficient to conclude that the individual defendants employed plaintiff to work at the defendant corporation. Plaintiff alleges that defendants Darhan, Hamed, and Joe hired and supervised his work at Mahopac. *See* SAC ¶¶ 21-

23.  Further, plaintiff alleges that the individual defendants "possessed operational control" over Mahopac.  *See id*.  A plaintiff's allegations that an individual and corporate defendant are part of a common ownership or management of a business, coupled with a defendant's default, are sufficient to allege joint employment following a default.  *See Pineda v. Masonry Contr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011).  Based on the plaintiff's allegations, this Court finds that plaintiff was jointly employed by the individual and corporate defendants.

### 2.    Whether Plaintiff's Employment was Covered by the FLSA

Next, the Court must determine whether plaintiff's employment falls under the FLSA's individual or enterprise coverage provisions.  The FLSA's minimum wage and overtime provisions apply only to those "employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')."  *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a)); *see Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (*per curiam*).  To properly plead enterprise coverage, a plaintiff must demonstrate that his employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently engaged in commerce or the production of commerce, including the "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."  29 U.S.C. § 203(s)(1)(A)(i)–(ii); *see* 29 C.F.R. § 779.238.

Plaintiff's allegations are sufficient to conclude that defendants are subject to the FLSA.  First, plaintiff claims that defendants were "directly engaged in interstate commerce."  SAC ¶ 34.

Second, plaintiff alleges that defendants had an annual gross volume of sales and business exceeding $500,000 during the relevant period.  *See id*. ¶ 33.  These allegations are sufficient to meet the pleading requirement for an enterprise coverage FLSA claim in a default proceeding.  *See Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA."), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Although some courts have questioned whether complaints that merely repeat the language of a statute without alleging supporting facts properly plead a cause of action, *see, e.g., Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85 (E.D.N.Y. 2012), other courts have held allegations similar to those made here with respect to enterprise coverage to be sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate" the enterprise and that generates "over $500,000.00 in annual sales d[id] not exclusively come from New York State." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see also Huerta v. Victoria Bakery*, No. 10-CV-4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) (courts can "infer[] the requisite interstate commerce connection under [a] sensible approach").  Here, given defendants' gross annual sales, "it can be inferred that some of the materials sold in the supermarket originated in interstate commerce." *Id*.  Courts in this District have routinely inferred, even absent specific allegations, that companies engaged in the supermarket industry are engaged in interstate commerce.  *See Pena v. Super Econ. One Way Supermarket Corp*., No. 20-CV-03060, 2021 WL 4755603, at *5 (E.D.N.Y. Sept. 8, 2021) ("Given Super Economics' annual sales, it can be inferred that some of the materials sold in the

supermarket originated in interstate commerce."); *Kliger v. Liberty Saverite Supermarket*, No. 17-CV-02520, 2018 WL 4782342, at *3 (E.D.N.Y. Sept. 17, 2018) ("The allegations in the Complaint suffice to establish that . . . Saverite is engaged in interstate commerce through its purchase and sale of goods in furtherance of its grocery business."); *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("It is logical to infer that a supermarket's products and produce would have originated outside of New York.").

Accordingly, this Court recommends finding that the allegations in plaintiff's SAC sufficient to conclude that the individual defendants jointly employed plaintiff, and his employment falls under the FLSA's protections.

**C.    NYLL**

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees.  The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  N.Y. Lab. Law § 190(3).  An employee is defined as "any person employed for hire by an employer in any employment."  *Id.* § 190(2).  Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA."  *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).

As stated above, this Court finds that plaintiff was jointly employed by the individual defendants and Mahopac under the FLSA.  This Court applies the same standards to recommend finding that plaintiff was jointly employed by the individual defendants and Mahopac under the

NYLL.[6] *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.") (collecting cases).

## III.   Relief

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  "Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Trustees of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).  Plaintiff must establish that he is entitled to the damages sought for violations of the FLSA and NYLL.

### A.   Unpaid Wages Due

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him [or her]." *Lu Nan Fan v. Jenny & Richard's Inc.*,

---

[6] As the Court finds that the individual defendants and Mahopac were jointly plaintiff's employers, each defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in plaintiff's favor. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (citing *Pineda*, 831 F. Supp. 2d at 685); *Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625, 2015 WL 12645527, at *4 (E.D.N.Y. Aug. 27, 2015).

No. 19-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn statements "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages in this context." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera*, 2015 WL 1529653, at *8. "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Lu Nan Fan*, 2019 WL 1549033, at *9.

Plaintiff has submitted his own sworn affidavit describing the dates of his employment along with average hours worked and the amount of his wages. *See* Pl. Decl. (Dkt. 60-7) ¶¶ 13-14, 16-17.  Plaintiff's attorney also has submitted exhibits in support of the instant motion, including tables of damage calculations. *See* Exhibit H, Damages Chart ("Damages Chart"), Dkt. 60-8.  In light of defendants' default, plaintiff's evidence on damages stands uncontroverted, and plaintiff has provided a sufficient basis upon which to determine damages.

### 1.    Regular Wage

"To calculate a plaintiff's minimum wage and overtime compensation, the Court must determine the plaintiff's regular hourly wage rate." *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019) (citing *Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011)).  Under the FLSA, the regular rate is defined

16

"as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract."  29 C.F.R. § 778.108.

To calculate the minimum wage and overtime compensation for plaintiff, the Court must first determine whether plaintiff works in the hospitality industry.  New York regulations define workers in the hospitality industry as including any restaurant or hotel employee.  *See*  N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, Section 146-3.1.  A restaurant is defined as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises . . . to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto."  *Id*.  Plaintiff claims that Mahopac fits into the definition of a restaurant since the supermarket "prepared and offered food such as sandwiches and salads, and sold serving cans of soft drinks and coffee to clients via counter service, for immediate human consumption."  Sojo Decl. ¶ 29.  Accordingly, the Court finds that plaintiff is a hospitality worker under the NYLL.  *See Perez v. 50 Food Corp.*, No. 17-CV-7837, 2019 WL 7403983, at *7 n.6 (S.D.N.Y. Dec. 4, 2019) (stating that employees are properly classified in the hospitality industry when they perform such tasks as "making salads, preparing sandwiches and other food items"); *see also Pareja v. 184 Food Corp.*, No. 18-CV-05887, 2021 WL 3109621, at *8 (S.D.N.Y. July 22, 2021) (classifying fruit stockers at a supermarket as employees in the hospitality industry).

Plaintiff was paid on a weekly basis.  *See* Sojo Decl. ¶¶ 17-18.  To determine the regular hourly rate, Escobar's weekly salary should be divided "by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113(a).  "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an

employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-0165, 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.") (quoting *Pinovi v. FSS Enters., Inc.*, No. 13-CV-2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)).

Even though plaintiff was paid a weekly salary, he alleges that he "did not receive overtime pay (at time and a half) for hours worked in excess of forty (40) hours per week." Sojo Decl. ¶ 20. Plaintiff does not allege that there was any agreement with defendants that his compensation was intended to cover less than 40 hours. In light of this, the Court applies the presumption that plaintiff's fixed salary was compensation for the first 40 hours he worked per week. From January 2013 to November 2017, defendants paid plaintiff $550 per week. *See* Sojo Decl. ¶ 17. Between, December 2017 to November 22, 2018, plaintiff received $650 per week. *See id.* ¶ 18.[7] Based on those figures, his regular rate of pay until November 30, 2017 was $13.75 per hour ($550/40) and after December 1, 2017 was $16.25 per hour ($650/40 hours). *See* Ex. H, Damages Chart, Dkt. 60-8.

---

[7] Plaintiff alleges that defendants did not pay plaintiff any wages for approximately two weeks and three days. Sojo Decl. ¶ 19; SAC ¶ 47. However, plaintiff does not identify the two-week period that he was not paid and the Damages Chart does not show any gap in payment. Thus, the Court finds that plaintiff did not plead these allegations sufficiently to establish defendants' liability.

### 2.    Unpaid Minimum Wages

The FLSA and the NYLL both mandate that employees be paid at least a minimum hourly rate for every hour that they work.  *See* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). "Although a plaintiff may be 'entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.'" *Gonzalez Mercedes v. Tito Transmission Corp.*, No. 15-CV-1170, 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (brackets omitted)), *report and recommendation adopted*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019).  "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) (citation omitted).

At all times relevant here, the FLSA required defendants to pay plaintiff a minimum hourly wage of $7.25.  *See* 29 U.S.C. § 206(a)(1)(C).  However, the applicable minimum wage during the plaintiff's employment is higher under the NYLL.  Given that the minimum wage under NYLL is higher than that of the FLSA, this Court analyzes plaintiff's minimum wage entitlement under the NYLL.

As a preliminary matter, the Court must determine whether to apply the rates for "small employers" or those or those employers with "ten or less employees."  N.Y. Lab. Law § 652(1)(a)(ii).  "In the absence of information as to the size of an employer's workforce, courts apply the rate for small employers." *Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17-CV-7095, 2019 WL 4739047, at *7 n.6 (E.D.N.Y. June 12, 2019), *report and recommendation adopted*, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019).  Here, plaintiff used the rates for large

employers, but never specified whether the defendants were small or large employers.  As plaintiff has not provided any information about the number of people defendants employ, this Court applies the rates for small employers.

The applicable minimum wage under the NYLL for a small New York City employer with ten or less employees was $7.15 per hour on and after January 1, 2007; $8.00 per hour on or after December 31, 2013; $8.75 on and after December 31, 2014; $9.00 on and after December 31, 2015; $10.50 per hour on and after December 31, 2016; $12.00 per hour on and after December 31, 2017; $13.50 per hour on or after December 31, 2018.  *See* N.Y. Lab. Law § 652(1)(a).  Here, plaintiff claims he was not paid the minimum wage.  Sojo Decl. ¶ 38.  However, his lowest hourly rate was $13.75, which is $.25 higher than the highest minimum wage under the NYLL for a small employer.  Accordingly, this Court does not find that the defaulting defendants failed to pay plaintiff minimum wage.

### 3.    Unpaid Overtime Compensation

Overtime compensation under the FLSA is 1.5 times the regular rate of pay for each hour worked in excess of forty hours per week.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a).  The NYLL incorporates and restates the FLSA's requirements, and the analysis of overtime claims under the NYLL is therefore generally the same as under the FLSA.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL).  "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half."  *Baizan Guerrero*, 2019 WL 4889591, at *8 (internal quotation marks and citation omitted).

Though plaintiff has made allegations sufficient to hold defaulting defendants liable under the both the FLSA and NYLL's overtime provisions, *see* Sojo Decl. ¶ 20, he is "not entitled to recover under both FLSA and NYLL for overtime earned during the same period." *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *10 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). The Court may, however, exercise its discretion to "award [] damages under the statute providing the greatest amount of relief." *Id.* Given that the higher rate of minimum wage under New York law leads to a higher overtime rate under the NYLL than the FLSA, this Court analyzes plaintiff's overtime wages entitlement under NYLL. *See Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (awarding back wages under the NYLL rather than the FLSA because "[p]laintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL").

Here, plaintiff sufficiently alleges that the defaulting defendants did not pay him any overtime compensation during his employment. SAC ¶ 5-6; Sojo Decl. ¶ 20. Plaintiff submitted an exhibit providing the number of hours worked per week during his employment. *See* Ex. H, Damages Chart, Dkt. 60-8. Plaintiff alleges that between January 30, 2013 and December 30, 2016, he worked 66 hours per week and, thus, should have received overtime pay for 26 hours (66-40=26). Pl. Decl. ¶ 13. From December 31, 2016 to November 22, 2018, he worked 60 hours per week and should have received overtime pay for 20 hours (60-40=20). Pl. Decl. ¶ 14.

From January 30, 2013 to December 30, 2016 (or 204 weeks and 2 days), plaintiff should have been compensated for 26 hours per week at an overtime rate of $20.63 ($13.75 x

1.5=$20.63).  For this period, Plaintiff is owed **$109,574.77** total ($20.63 x 26 hours x 204.285714286 weeks=$109,574.77).

From December 31, 2016 to November 30, 2017 (or 47 weeks and 5 days), plaintiff should have been compensated for 20 hours per week at an overtime rate of $20.63 ($13.75 x 1.5=$20.63).  For this period, plaintiff is owed **$19,686.91** total ($20.63 x 20 hours x 47.7142857143 weeks=$19,686.91).

From December 1, 2017 to November 22, 2018 (or 50 weeks and 6 days), plaintiff should have been compensated for 20 hours per week at an overtime rate of $24.38 ($16.25 x 1.5=$24.38).  For this period, plaintiff is owed **$24,449.66** total ($24.38 x 20 hours x 50.1428571429 weeks=$24,449.66).

In sum, this Court recommends that plaintiff be awarded a sum of **$153,711.34** in unpaid overtime wages.[8]

### 4.    Spread of Hours Compensation

In New York, employees are entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  However, "[o]nly employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation." *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375, 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019).  Here, as discussed above, plaintiff received more than the minimum wage during the entire period in question.  This Court, therefore, recommends finding that defaulting defendants are not liable for any spread-of-hours violations under the NYLL.

---

[8] The damage award recommended here is slightly lower than the damages requested.  *See* Ex. H, Damages Chart, Dkt. 60-8.  Any discrepancies are likely due to plaintiff rounding the number of weeks.  Here, the Court used more precise numbers of weeks in calculating damages.

**B.    Statutory Damages under the Wage Theft Prevention Act**

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  Violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-b).  Furthermore, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotation marks and citation omitted).  After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000.  N.Y. Lab. Law § 198(1-d).

Here, plaintiff alleges that he never received a wage notice or wage statements from the defaulting defendants at any point throughout the course of his employment.  *See* Sojo Decl. ¶ 39.  Because plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, this Court recommends awarding plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000**.  *See Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

**C.    Liquidated Damages**

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the

23

unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA.  *See* 29 U.S.C. § 260.  Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to 100 percent of the total amount of the wages found to be due . . . unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA."  *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (internal quotation marks and citation omitted).  However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions."  *Id.*; N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith.  *See Lu Nan Fan*, 2019 WL 1549033, at *11.  Although plaintiff seeks 100 percent of his damages under the NYLL for minimum wages, overtime wages and spread-of-hour premiums, plaintiff is entitled to damages only for defendants' failure to pay overtime wages for the reasons discussed above.  As defendants owe plaintiff $153,711.34 in overtime wages, this Court recommends awarding Escobar **$153,711.34** in liquidated damages.

**D.      Other Damages**

In addition to the damages discussed above, plaintiff requests pre- and post-judgment interest and attorneys' fees.

**1.      Pre- and Post-judgment Interest**

Plaintiff seeks prejudgment interest on his state law claims.  While prejudgment interest may not be awarded in addition to liquidated damages under the FLSA, "the NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin*, 93 F. Supp. 3d at 48.  The NYLL provides for prejudgment interest at an interest rate of 9 percent per annum.  *See* N.Y. Lab. Law § 198(1-a); *Espinoza v. Indus. Glass & Mirror Inc.*, No. 16-CV-64, 2016 WL 7650592, at *6 (E.D.N.Y. Nov. 30, 2016), *report and recommendation adopted*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017).

Where damages were incurred at various times, courts have discretion to award prejudgment interest either "from the date [the damages were] incurred" or from a reasonable intermediate date.  *See Fermin*, 93 F. Supp. 3d at 49.  Here, plaintiff incurred damages at various times throughout his employment.  Thus, the Court finds that the midway point between when plaintiff began and ceased working for defendants is a reasonable intermediate date for purposes of calculating prejudgment interest.  *See id.* (collecting cases where Courts used midpoints of the claims to calculate prejudgment interest).

Plaintiff requests damages from January 30, 2013 to November 22, 2018.  The intermediate date is approximately December 27, 2015.  As such, this Court recommends awarding plaintiff prejudgment interest to accrue from December 27, 2015 until entry of judgment.  "To calculate the per diem interest rate, [courts must] multipl[y] the statutory rate of 9% per annum by the total damages award for [plaintiff's] minimum wage, overtime, and spread

of hour wages claims." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2020 WL 5822455, at

*11 (E.D.N.Y. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 5820547

(E.D.N.Y. Sept. 30, 2020).  Here, this yields a per diem rate of $37.90 (.09/365 x $153,711.34 =

$37.90).  Thus, the Court recommends that plaintiff be awarded the daily prejudgment interest

rate of $37.90 multiplied by the number of days between December 27, 2015 and the date

judgment is entered.  *See id*.

Plaintiff also is entitled to post-judgment interest.  "Post-judgment interest rates are

calculated from the date of the entry of judgment at [the federal] rate equal to the weekly average

1-year constant maturity Treasury yield . . . for the calendar week preceding the date of

judgement.  *See Hernandez*, 2019 WL 643735, at *8 (internal citations and quotations omitted).

Accordingly, this Court recommends awarding plaintiff post-judgment interest on all sums

awarded, commencing once the Clerk of the Court enters judgment and continuing until the date

the defaulting defendants pay the judgment.  *See id*.

### 2.    Attorney's Fees and Costs

Plaintiff seeks to recover $12,765[9] in attorney's fees and $871.30 in costs.  *See* Ex. I,

Attorney's Bills, Dkt. 60-9.  Plaintiff is entitled to recover reasonable attorney's fees and costs

under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  "The party

seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the

necessity of the hours spent and rates charged."  *Fermin*, 93 F. Supp. 3d at 51; *see generally*

---

[9] The Court takes notice of plaintiff's mathematical error in calculating the $12,765 amount
requested for attorney's fees.  When properly calculated, the total number of attorney's fees is
$12,917.50, including $2,655 for the work Mr. Faillace performed (5.9 hours x $450 per
hour=$2,655), $4,025 for the work Mr. Tucker performed (11.5 hours x $350 per hour=$4,025);
$750 for the work Mr. Robinson performed (2.5 hours x $300=$750); $350 for the work Ms.
Sojo performed (1 hour x $350=$350); and $5,137.50 for the work performed by paralegals
(41.1 x $125 per hour=$5,137.50).

*N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  A fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148.  "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010).  District courts have broad discretion in determining the reasonableness of an attorney's requested fees.  *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18 Civ. 3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

Plaintiff has submitted time records to support his fee application.  *See* Ex. I, Attorney's Bills, Dkt. 60-9.  These records and information provided by plaintiff's counsel indicate that four attorneys and at least one paralegal worked on this case.  *See* Sojo Decl. ¶ 52.  Michael Faillace,[10] the former manager member of Michael Faillace & Associates, P.C., billed approximately 5.9 hours at a rate of $450 per hour.  *Id.*; Ex. I, Dkt. 60-9.  Clifford Tucker, who was an associate at the same firm, billed approximately 11.5 hours at a rate of $350 per hour. *See id*.  Bryan D. Robinson, an associate at CSM Legal, P.C. ("CSM," formerly Michael Faillace & Associates), billed approximately 2.5 hours at a rate of $300 per hour.  *See id*.  Catalina Sojo, managing member of CSM, billed approximately 1 hour at a rate of $350 per hour.  *See id*. Paralegals spent approximately 41.1 hours at a rate of $125 per hour.  *See id*.

The FLSA permits a plaintiff to recover reasonable attorney's fees.  To determine

---

[10] The Court notes that Mr. Faillace was suspended from the practice of law for two years.  *See* Dkt. 55; *see also Tambriz v. Taste & Sabor LLC*, No. 20-CV-5409, 2021 WL 6754956, at *13 n.14 (S.D.N.Y. Dec. 29, 2021), *report and recommendation adopted*, 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022).

whether attorney's fees are reasonable, Courts consider both the hourly rate and number of hours worked. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts determine whether an attorney's hourly rate is reasonable by considering what a reasonable paying client would be willing to pay and by looking at the attorney's experience. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Shariff v. Alsaydi*, No. 11-CV-6377, 2013 WL 4432218, at *4 (E.D.N.Y. Aug. 15, 2013).

Here, Mr. Faillace is the former Managing Member of Michael Faillace & Associates, P.C. Sojo Decl. ¶ 52.a. Before his suspension, he had been practicing since 1983 and had taught law school classes and given lecturers on employment law. *Id*. He also authored the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace and other employment law publications. *Id*. While Mr. Faillace is an experienced litigator, "Mr. Faillace's requested rate is at the high end of the rates typically awarded to partners in FLSA cases in this District." *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003, 2021 WL 2227977, at *12 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, No. 20-CV-3003, 2021 WL 2223275 (E.D.N.Y. June 2, 2021). Courts in this district have previously awarded an hourly rate of $375 or less per hour to Mr. Faillace in FLSA defaults. *Id*. at *12 (collecting cases). In light of the procedural posture of this case and the prior precedent, the Court recommends Mr. Faillace be awarded $375 per hour.

Mr. Tucker is a former associate at Michael Faillace & Associates, P.C. Sojo Decl. ¶ 52.b.; *see also* Mot. to Withdraw as Attorney, Dkt. 52. He has a background in personal injury and civil rights actions and has "managed a case load of over 100 actions from intake to verdict." Sojo Decl. ¶ 52.b. Mr. Tucker requests an hourly rate of $350. *Id*. This proposed rate is usually granted to partners or independent practitioners in this district. Plaintiff's counsel failed to

include information about Mr. Tucker's credentials that would support such a high award, such as the number of years he has practiced law.  Courts in this district have previously awarded $200 per hour for associates at Michael Faillace & Associates, P.C. in similar cases.  *See De la Cruz Casarrubias*, 2021 WL 2227977, at *12.  Thus, given plaintiff's "failure to provide information" on Mr. Tucker's experience and prior precedent in this district, this Court recommends an hourly rate of $200 for Mr. Tucker.  *See id*.

Mr. Robinson is an associate at CSM, formerly Michael Faillace & Associates.  Sojo Decl. ¶ 52.c.  He has, presumably, been practicing law since 2018 when he graduated from law school.  *Id*.  Mr. Robinson has a background in civil and criminal litigation, and "[h]e has managed a case load of over 90 actions from intake to verdict."  *Id*.  Mr. Robinson requests an hourly rate of $300.  *Id*.  Like Mr. Tucker, this proposed rate is unusually high, and plaintiff's counsel has failed to include information about Mr. Robinson's credentials that would support such a high reward.  Courts in this district have previously awarded $200 per hour for associates at Michael Faillace & Associates, P.C. in similar cases.  *See De la Cruz Casarrubias*, 2021 WL 2227977, at *12.  Thus, given plaintiff's "failure to provide information" on Mr. Robinson's experience and prior precedent in this district, this Court recommends an hourly rate of $200 for Mr. Robinson.  *See id*.

Ms. Sojo is the managing member of CSM.  Sojo Decl. ¶ 52.d.  She "graduated with a J.D. equivalent degree" in 2017, and she "received a Master of Laws degree (LL.M.) from Cornell University School of Law in 2019."  *Id*.  Ms. Sojo has a background in intellectual property litigation and enforcement.  *Id*.  Ms. Sojo requests an hourly rate of $350 per hour.  *Id*. Like Mr. Tucker and Mr. Robinson, Ms. Sojo's proposed rate is unusually high, and counsel has failed to provide information to support such a high award.  *See De la Cruz Casarrubias*, 2021

29

WL 2227977, at *12.  This Court, therefore, recommends an hourly rate of $200 for Ms. Sojo.

Plaintiff's counsel also requests $125 per hour for the work of paralegals at the law firm. Sojo Decl. ¶ 52.e.  Plaintiff's counsel does not provide any additional information about the paralegals to support this hourly rate.  "Within this district, the requested rate of $125 per hour is at the higher end of what courts in this district award for the work done by paralegals."  *See Thompson*, 2020 WL 5822455, at *12 (collecting cases awarding paralegals an hourly rate of $75 per hour); *see also De la Cruz Casarrubias*, 2021 WL 2227977, at *12 (reducing paralegal fees from $150 to $75).  Based on what courts in this district have awarded for support staff previously, this Court recommends reducing the paralegal rate from $125 to $75.

Next, this Court must determine that the hours billed were also reasonable.  Courts award fees only for hours that are "reasonably expended."  *Hensley*, 461 U.S. at 433.  Plaintiff's counsel submitted an itemized time sheet showing that his firm spent 62 hours on this case.  *See* Dkt. 60-9.  "In determining the proper number of hours for which a party should be compensated, the court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18 Civ. 126, 2019 WL 3937126, at *16 (E.D.N.Y. July 3, 2019) (internal quotation marks and citation omitted).

Here, the billing statement submitted by plaintiff's counsel reflects 62 hours of work expended in this case, including 5.9 hours by Mr. Faillace, 11.5 by Mr. Tucker, 2.5 by Mr. Robinson, 1 by Ms. Sojo, and 41.1 by paralegals.  The Court finds the hours billed by the attorneys to be a reasonable amount of time expended to litigate this action.  *See Elvey*, 2019 WL 3937126, at *16 (finding 11.25 hours spent litigating FLSA and NYLL defaults to be reasonable) *Lopez v. PMMT Inc.*, No. 14 Civ. 2057, 2017 WL 27943, at *16 (E.D.N.Y. Jan. 3, 2017) (finding

25.6 hours spent litigating FLSA defaults to be reasonable); *Cruceta v. City of N.Y.,* No. 10 Civ. 5059, 2012 WL 2885113, at *8 (E.D.N.Y. Feb. 7, 2012) (finding 17.1 hours spent litigating an FLSA default reasonable).

For the paralegals, however, the invoices reflect various inefficiencies or errors that justify reducing the award. *See Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964, 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016). Courts have found hours expended to be unreasonable where invoices were vague or incorrect, or where attorneys or paralegals "spend an excessive number of hours performing relatively straight forward tasks." *Id*. Here, the paralegals' time entries are overly vague or clearly incorrect. For example, the invoice reflects that on July 31, 2020, a paralegal billed 0.5 hours "[r]eviewing default judgment motion to compell [sic] documents." Dkt. 60-9 at 3. Several vague time entries include the language "review[ing] case file" or "review[ing] and docket[ing] court notice in preparation for litigation" without any further details or explanation for the duplicate task. *Id*. Finally, the number of hours billed is high for a FLSA default judgment, even given the fact that the plaintiff's counsel had to file the default judgment motion multiple times. Plaintiff's counsel cites no case law where courts awarded over 50 hours in attorney's fees for a FLSA or NYLL default judgment or where paralegals have billed approximately 40 hours.

Where courts find that the number of hours billed is improper, courts often reduce the hours billed by 20-40 percent. *See Dacas v. Duhaney*, No. 17-CV-3568, 2020 WL 4587343, at *5 (E.D.N.Y. June 18, 2020), *report and recommendation adopted*, 2020 WL 4586371 (E.D.N.Y. Aug. 10, 2020) (internal quotation marks omitted) (collecting cases where compensable hours were reduced by 30-40 percent); *see also Guo*, 2016 WL 452319, at *7 (reducing the compensable hours by 40 percent); *Payamps v. M & M Convenience Deli &*

*Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *16 (E.D.N.Y. Dec. 9, 2019) (reducing the compensable hours by 20 percent). "A percentage reduction is a practical means of trimming fat from a fee application and is a permissible way of reducing a fee award." *Dacas*, 2020 WL 4587343, at *5. Accordingly, this Court recommends that the compensable paralegal hours should be reduced by 40 percent.

Thus, this Court recommends awarding attorney's fees of **$7,062**, which includes $2,212.50 for the work Mr. Faillace performed (5.9 hours x $375 per hour=$2,212.50), $2,300 for the work Mr. Tucker performed (11.5 hours x $200 per hour=$2,300); $500 for the work Mr. Robinson performed (2.5 hours x $200=$500); $200 for the work Ms. Sojo performed (1 hour x $200=$200); and $1,849.50 for the work performed by paralegals (41.1 x 60 percent for the 40 percent reduction in paralegal hours x $75 per hour=$1,849.50).

Plaintiff also seeks to recover litigation-related costs in the amount of $871.30, including the $400 for the filing fee and $471.30 in "other costs associated with serving the Defendants with the Summons and Complaints." *See* Sojo Decl. ¶ 48. These expenditures are itemized on plaintiff's counsel's time records. *See* Dkt. 60-9. Thus, this Court recommends that plaintiff be awarded costs in the amount of **$871.30.**

### Conclusion

For the reasons set forth above, this Court respectfully recommends: (1) granting plaintiff's motion for a default judgment against defendants Darhan, Joe, and Mahopac, jointly and severally, and entering judgment against the defaulting defendants; (2) denying plaintiff's motion for default judgment against defendant Hamed; (3) awarding plaintiff damages totaling **$317,422.68**, consisting of **$153,711.34** in unpaid overtime compensation, **$10,000** in statutory damages, **$153,711.34** in liquidated damages; and (4) awarding plaintiff pre- and post-judgment

interest, as described above; and (5) awarding plaintiff's counsel **$7,933.30**, consisting of **$7,062** in attorney's fees and **$871.30** in costs.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendants at their last known address and to file proof of service on ECF by **March 6, 2023**. Any objections to the recommendations made in this Report must be filed with the Honorable Frederic Block within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 16, 2023**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

       **SO ORDERED**

Dated: Brooklyn, New York
      March 2, 2023

                             s/ James R. Cho
                             James R. Cho
                             United States Magistrate Judge